UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEMAN DATA SYSTEMS,
LLC, ET AL.,

    Plaintiffs,

v.        Case No. 8:12-cv-2580-T-24 EAJ

MARC S. SCHESSEL, ET AL.,

    Defendants.
_____

MARC S. SCHESSEL, ET AL.,

    Counter-Plaintiffs,

v.

DEMAN DATA SYSTEMS,
LLC, ET AL.,

    Counter-Defendants,
and

NORMAN R. DOBIESZ,

    Third-Party Defendant.
_____/

**ORDER**

    This cause comes before the Court on two motions: (1) Norman Dobiesz's Motion to Dismiss (Doc. No. 107), which Marc Schessel and Primrose Solutions oppose ("Primrose") (Doc. No. 133); and (2) Deman Data Systems ("DDS") and Florida Software Systems, Inc.'s ("FSS-FL") Motion to Dismiss (Doc. No. 106), which Schessel and Primrose oppose (Doc. No. 134). As explained below, Dobiesz's motion is granted and DDS and FSS-FL's motion is granted in part and denied in part.

**I. Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

**II. Background**

On November 14, 2012, DDS, Florida Software Systems Corporation ("FSS"), Florida Software Systems, Inc. ("FSS-FL") filed this lawsuit. They have amended their complaint twice, and their Second Amended Complaint is summarized, in pertinent part, below. (Doc. No. 75). In response, Schessel and Primrose filed an Amended Counterclaim and Third-Party Complaint,

2

which is also summarized below. (Doc. No. 89).

### A. DDS, FSS, and FSS-FL's Allegations

FSS contends that is the owner of certain proprietary software ("Software") created for use in the healthcare industry. FSS-FL contends that it is the developer of the Software under a license from FSS, which allows FSS-FL to possess, utilize, and further license the Software to DDS. DDS contends that it is the exclusive provider of certain data services utilizing the Software, and DDS is authorized to and has granted limited, non-exclusive, non-transferable licenses to certain specifically identified healthcare facilities, hospitals, and healthcare providers throughout the United States ("DDS Customers") to utilize the Software.

Dobiesz is the CEO, chairman, and currently 100% owner of the membership units of DDS. Dobiesz is also the sole officer and 100% owner of FSS-FL. FSS-FL is the Manager of DDS.

DDS, FSS, and FSS-FL contend that Schessel engaged in certain misconduct. Schessel joined DDS and FSS-FL as an employee in 2003. In connection with his employment, Schessel signed two employment agreements (in 2003 and 2009). The employment agreements both provided that Schessel agreed that any invention that related to DDS's business that he, alone or with others, developed during the term of the employment agreement and for a period of one year after the termination of his employment shall be exclusively assigned to DDS.

On or around July 30, 2012, DDS terminated Schessel's employment for the following proffered reasons: (1) Schessel's resignation due to failure and refusal to report to work and perform the substantial duties and responsibilities of his employment; (2) failure and refusal to carry out the directions of DDS's chairman; (3) failure and refusal to follow the policies and

directives established by DDS; and (4) the revelation that Schessel had been convicted of criminal acts for filing fraudulent or false tax returns.  However, prior to and after his employment was terminated, Schessel allegedly engaged in a pattern of misconduct, including: (1) accessing the DDS servers to transfer and/or delete certain confidential information; (2) contacting DDS Customers and partners to solicit their business on behalf of a company that Schessel was going to form; (3) storing confidential information that he removed from the DDS computer system and then permanently misappropriating and converting that information to his own use and for the use and benefit of the company that he was going to form; (4) forming Defendant Primrose on October 4, 2012 for the purpose of targeting and soliciting DDS Customers and employees and utilizing DDS's trade secrets and confidential information; (5) actively targeting and soliciting DDS Customers; and (6) making multiple attempts, without authorization, to access and actually accessing the computer systems of DDS and obtaining confidential information.  Additionally, Plaintiffs contend that Schessel withheld material information from DDS and Dobiesz regarding: (1) the termination of Schessel's prior employment because he was suspected of being involved in fraudulent activities, (2) a fraud investigation and Schessel's guilty plea, (3) his statements at his sentencing that he was the sole owner of DDS's confidential information, (4) Schessel's unpaid income tax obligations and IRS levies, and (5) a lawsuit commenced against Schessel by his former employer.

As a result of the above, DDS, FSS, and FSS-FL assert ten counts in their Second Amended Complaint: (1) violation of the Computer Fraud and Abuse Act, (2) misappropriation of trade secrets, (3) enforcement of restrictive covenants, (4) civil theft, (5) tortious interference, (6) civil conspiracy, (7) breach of fiduciary duty, (8) fraud, (9) breach of the 2003 and 2009

employment agreements, and (10) failure to pay promissory notes.

### B.  Schessel and Primrose's Allegations

Schessel and Primrose filed a counterclaim against DDS and FSS-FL, as well as a third-party complaint against Dobiesz.  Schessel alleges that he met with Dobiesz in 2002 and that Dobiesz pressured him into forming a company together that they would equally own.  DDS, a limited liability company ("LLC"), was formed in December of 2002.  When DDS's January 2, 2003 Operating Agreement was signed, Schessel only owned 1/3 of the membership units of DDS.  The other 2/3 of the membership units of DDS were owned 1/3 by FSS-FL, as managing member, and 1/3 by IHC, Ltd.  Both FSS-FL and IHC, Ltd. are owned and controlled by Dobiesz.

Schessel alleges that on August 30, 2011, Dobiesz, on behalf of FSS-FL, unilaterally amended the January 2, 2003 Operating Agreement for DDS without the knowledge or consent of Schessel.  Schessel contends that the amendment purports to allow FSS-FL, as majority member of DDS, to expel any minority member of DDS (i.e., Schessel), with or without cause.

Schessel contends that Dobiesz engaged in various improprieties with regards to DDS, such as: (1) preventing Schessel from seeing DDS's financial records, (2) employing Dobiesz' unqualified family members, (3) diverting DDS's funds, (4) slandering Schessel to DDS's and FSS-FL's employees, as well as to DDS's customers, and (5) terminating Schessel's employment and expelling him as a member of DDS.

As a result, Schessel and Primrose assert the following claims against Dobiesz, DDS, and FSS-FL.  In Count I, Primrose asserts a tortious interference claim against Dobiesz, DDS, and FSS-FL with regard to their alleged interference with Primrose's attempt to close contracts with

ROI Healthcare ("ROI") and FTI Consulting ("FTI").  In Count II, Primrose and Schessel allege that Dobiesz, DDS and FSS-FL defamed them by contacting businesses that Primrose was marketing its services to and telling the businesses that Schessel had stolen money from Dobiesz and DDS and that both Primrose and Schessel could not be trusted.

In Count III, Schessel asserts a breach of fiduciary duty claim against Dobiesz and FSS-FL based on the following conduct by Dobiesz (on his own behalf and on behalf of FSS-FL): (a) taking money owed by DDS to Schessel for salary, distributions and expense reimbursements and diverting it to himself; (b) causing DDS to employ Dobiesz family members and paying them using DDS funds when the family members were not qualified for such employment and did not contribute value to DDS equivalent to the money being paid to them; (c) purporting to "expel" Schessel as an owner of DDS member units without any legal basis to do so; (d) excluding Schessel from enjoying the profits of DDS while paying such profits to himself; and (e) causing DDS to enter into contracts with entities owned directly or indirectly by Dobiesz and paying money to them without receiving products or services with a value equivalent to the payments made to them.  In Count IV, Schessel asserts a breach of loyalty claim against FSS-FL based on the same allegations set forth in Count III, plus the allegations that: (1) FSS-FL failed to act in good faith and to deal fairly with Schessel, and (2) FSS-FL purported to amend the January 2, 2003 Operating Agreement for DDS without the consent of Schessel.

In Count V, Schessel alleges that on August 30, 2011, FSS-FL unilaterally amended the January 2, 2003 Operating Agreement for DDS without the consent of Schessel in order to allow Dobiesz, who controlled FSS-FL (the majority member of DDS), to expel Schessel without cause.  Schessel contends that the amendment is invalid, and as such, Schessel asserts a claim for

6

the Court to declare the rights and obligations of FSS-FL, DDS, and Schessel under the Operating Agreement and the amendment thereto. Thus, Schessel seeks a declaration that the August 30, 2011 amendment is invalid and unenforceable. In Count VI, Schessel asserts an alternative claim against DDS for breach of the August 30, 2011 amendment due to DDS's failure to pay Schessel for his membership units in DDS when he was expelled.

In Count VII, Schessel asserts a claim against FSS-FL for breach of paragraph 4.5 of the January 2, 2003 Operating Agreement for DDS. Paragraph 4.5 of the Operating Agreement provides that FSS-FL shall perform its duties in good faith, in a manner that it reasonably believes to be in the best interests of DDS, and with such care as an ordinarily prudent person in a similar position would use under similar circumstances.

In Count VIII, Schessel asserts an unjust enrichment claim against DDS due to DDS's failure to pay more than $175,000 in travel expenses that Schessel incurred for the benefit of DDS. In Count IX, Schessel asserts an unpaid wages claim against DDS for its failure to pay Schessel his agreed upon salary and bonuses during his employment.

Finally, in Count X, Schessel asserts a fraud in the inducement claim against Dobiesz regarding the promissory notes that DDS is seeking to enforce in Count X of DDS's Second Amended Complaint. Specifically, Schessel alleges that Dobiesz fraudulently induced Schessel into executing the promissory notes by promising that the promissory notes would represent increased compensation in the form of monthly advances, and each $15,000 monthly promissory note would be considered paid back by Schessel each month that he performed work for DDS. Schessel contends that Dobiesz knew that his representations were false when Dobiesz made them and that Dobiesz actually intended to demand double payment from Schessel (i.e., in the

form of Schessel's performance of work for DDS and in the form of repayment of the money due under the promissory notes).

### III.  Motions to Dismiss

Dobiesz moves to dismiss the third-party complaint, and FSS-FL and DDS move to dismiss the counterclaims.  Accordingly, the Court will analyze each motion.

#### A.  Dobiesz's Motion to Dismiss

Schessel and Primrose assert four claims against Dobiesz: (1) tortious interference, (2) defamation, (3) breach of fiduciary duty, and (4) fraud in the inducement.  Dobiesz makes three arguments in support of his contention that these claims should be dismissed, including the argument that the claims are not properly brought under Federal Rule of Civil Procedure 14(a).  Because the Court agrees with that argument, the Court need not address Dobiesz's other arguments.

Rule 14(a)(1) provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  Dobiesz argues that the claims against him are not properly brought under Rule 14(a), because the claims do not assert Dobiesz's derivative liability for the claims asserted by Plaintiffs against Primrose and Schessel.

Primrose and Schessel respond that the fraud in the inducement claim operates as an indemnity claim, and as such, it is properly brought under Rule 14(a).  Specifically, they allege in their third-party complaint that if Schessel is liable to DDS on its claim to enforce the promissory notes, "then Schessel has a right to be indemnified by Dobiesz in the amount of any damages awarded against Schessel on such claim." (Doc. No. 89, p. 19).  As such, Primrose and

Schessel argue that once they properly implead Dobiesz under Rule 14(a), they can assert any other additional claims they may have against Dobiesz under Rule 18(a).[1] As explained below, the Court rejects Primrose and Schessel's argument that they can properly implead Dobiesz by asserting the fraud in the inducement claim.

The Eleventh Circuit has stated the following regarding impleading a third-party:

> Rule 14(a) allows a defendant to assert a claim against any person not a party to the main action only if that third person's liability on that claim is in some way dependent upon the outcome of the main claim. Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim.

U.S. v. Olavarrieta, 812 F.2d 640, 643 (11th Cir 1987)(citations omitted).

In support of his contention that the fraud in the inducement claim is not properly brought under Rule 14(a), Dobiesz cites U.S. Distributors, Inc. v. Block, 2010 WL 337669, at *4 (S.D. Fla. Jan. 22, 2010). In Block, the plaintiff corporation asserted claims "aris[ing] out of a transaction for the purchase and sale of aircraft parts and vehicles and the assumption of rental payment obligations for a leased storage facility." Id. at *1. The defendant attempted to assert a third-party complaint against the Confalones (the husband was an officer and the wife was an agent of the plaintiff corporation), alleging that they made material misrepresentations that induced him to enter into the agreement in question. See id. at *1, 3. The defendant asserted a fraud in the inducement claim against the Confalones under Rule 14(a) and argued that it operated as an indemnity claim. See id. The court rejected the argument, stating:

> The Court is unaware of any circumstance under which the

---

[1] Rule 18(a) provides that a party asserting a third-party complaint may join as many claims as it has against the third-party defendant.

> Confalones would be liable for the damages that the Plaintiff might obtain against the Defendant. James Confalone is an officer of the Plaintiff and, at least as alleged in the complaint, his wife, Karen Confalone, was acting on behalf of the Plaintiff in connection with the Plaintiff's transaction with the Defendant. Under these circumstances, if the Court allowed the third-party complaint to stand, it would implicitly rule that the officers and agents of a corporation that is suing for breach contract could be or are liable for any damages that the corporation obtains against the party that is found to have breached the contract. That unlikely scenario does not exist in this case.
>
> \* \* \*
>
> Apparently recognizing that Rule 14 is typically used to bring indemnitors into the litigation, the Defendant argues that his fraud-in-the-inducement claim operates as an indemnity claim. The problem with this theory is that the fraud-in-the-inducement claim is not an indemnity claim. Under the third-party complaint, the Confalones may be liable to the Defendant even if the Plaintiff does not prevail in its lawsuit. In this respect, the claims in the third-party complaint are independent from the main litigation even though they arise out of the same transaction. To the extent the Defendant contends that he was tricked into a contract, he should raise (as he has already done) that claim as an affirmative defense and counterclaim.

Id. at \*3, 4.

The situation in Block is quite similar to the instant case, and the Court is persuaded by the Block court's analysis and conclusion. Schessel and Primrose do not address the Block case, and thus, there is no argument before the Court that Block is distinguishable. Furthermore, the Court reads their opposition to implicitly concede that Dobiesz's liability under the fraud in the inducement claim is not entirely dependent on DDS's success against Schessel on the enforcement of the promissory notes claim. Schessel and Primrose do not contend that Dobiesz's liability on the fraud in the inducement claim would be eliminated if DDS's claim on the notes is rejected and no award is made. Instead, they state that "if DDS's claim on the notes is rejected and no award is made, then Schessel's damages for the fraud in the inducement *will*

10

*be greatly reduced*." (Doc. No. 133, p. 6)(emphasis added).

Accordingly, this Court agrees with Dobiesz and concludes that the fraud in the inducement claim is not properly brought under Rule 14(a). As such, none of the claims against Dobiesz are properly before this Court and must be dismissed without prejudice. If Primrose and Schessel want to pursue their claims against Dobiesz, they will have to do so in a separate action.

### B.  FSS-FL and DDS's Motion to Dismiss

Schessel and Primrose assert nine counterclaims against FSS-FL and DDS: (1) a tortious interference claim against both, (2) a defamation claim against both, (3) a breach of fiduciary duty claim against FSS-FL, (4) a breach of loyalty claim against FSS-FL, (5) a declaratory judgment claim against both, (6) a breach of the amendment to the Operating Agreement against DDS, (7) a breach of the Operating Agreement against FSS-FL, (8) an unjust enrichment claim against DDS, and (9) an unpaid wages claim against DDS. FSS-FL and DDS ("the Companies") move to dismiss several of these claims, arguing that: (1) the Court lacks supplemental subject matter jurisdiction over four of these claims, and (2) three of the claims are not sufficiently pled. Accordingly, the Court will address each argument.

#### 1.  Supplemental Jurisdiction

The Companies argue that the Court lacks supplemental jurisdiction over the tortious interference, defamation, unjust enrichment, and unpaid wages claims, because those claims do not arise out of a common nucleus of operative fact with the federal Computer Fraud and Abuse Act ("CFAA") claim. The Court rejects this argument in part.

This Court has federal question subject matter jurisdiction over this case due to Plaintiffs' CFAA claim. As a result, the Court has "supplemental jurisdiction over all state claims which

11

arise out of a common nucleus of operative fact with" the CFAA claim. Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006).

The allegations supporting the CFAA claim are that Schessel improperly accessed DDS's servers to obtain DDS's confidential information and customer information, and Schessel used that information when he created Primrose to target and solicit DDS's customers. Primrose and Schessel's tortious interference, defamation, and unpaid wages claims arise out of a common nucleus of operative fact with the CFAA claim in the same way that Plaintiffs' state law claims arise out of a common nucleus of operative fact with the CFAA claim. Such claims arise out of the employment relationship between Schessel and DDS and the fallout that occurred after Schessel was terminated.

The defamation claim includes allegations that the Companies defamed Primrose and Schessel by telling others that they could not be trusted. The basis for the Companies' contention that Schessel and Primrose could not be trusted is likely due, in part, to the Companies' allegation that Schessel improperly accessed DDS's servers to obtain DDS's confidential information and customer information. Furthermore, the defamation claim relates directly to Plaintiffs' civil theft and fraud claims. If this Court has supplemental jurisdiction over Plaintiffs' civil theft and fraud claims, then it has supplemental jurisdiction over Primrose and Schessel's defamation claim.

Likewise, the tortious interference claim directly relates to Plaintiffs' tortious interference claim, as both claims appear to relate to the same two customers (ROI and FTI). Thus, if this Court has supplemental jurisdiction over Plaintiffs' tortious interference claim, then it has supplemental jurisdiction over Primrose's tortious interference claim with the same

customers.

Additionally, the unpaid wages claim relates directly to Plaintiffs' claim to enforce the promissory notes, because Schessel alleges that the promissory notes evidenced advances to his salary. Thus, to the extent that Plaintiffs seek to enforce the promissory notes, they are (according to Schessel) denying him his salary (in the form of cancelling the promissory notes). As such, if this Court has supplemental jurisdiction over Plaintiffs' claim to enforce the promissory notes, then it has supplemental jurisdiction over Schessel's unpaid wages claim.

While the Court agrees that it has supplemental jurisdiction over the defamation, tortious interference, and unpaid wages claims, the Court rejects Schessel and Primrose's argument that the Court has supplemental jurisdiction over the unjust enrichment claim. The unjust enrichment claim seeks reimbursement for Schessel's travel expenses, and such a claim does not arise out of a common nucleus of operative fact with the CFAA claim. The Court notes that Schessel and Primrose argue that this claim directly relates to Plaintiffs' breach of contract claim. However, Plaintiffs' breach of contract claim has been limited to the allegation that Schessel violated his obligation to assign certain inventions to DDS. (Doc. No. 147). Therefore, the Court must dismiss the unjust enrichment claim without prejudice, because the Court lacks supplemental jurisdiction over it.

### 2. Sufficiency of the Allegations

Next, the Companies argue that Primrose and Schessel have not sufficiently alleged their tortious interference, breach of fiduciary duty, and declaratory judgment claims. Accordingly, the Court will analyze each claim.

### a. Tortious Interference

In Count I, Primrose asserts a tortious interference claim against DDS and FSS-FL with regard to their alleged interference with Primrose's attempt to close contracts with ROI and FTI. Primrose alleges that Dobiesz (who owns and controls DDS and FSS-FL) was aware of Primrose's advantageous business relationships with ROI and FTI. Furthermore, Primrose alleges that Dobiesz, on behalf of DDS and FSS-FL, induced ROI and FTI to stop doing business with Primrose. As a result, Primrose lost contracts and advantageous business relationships with ROI and FTI, which were ready to sign contracts with Primrose until Dobiesz interfered.

The Companies move to dismiss this counterclaim, arguing that it is not sufficiently pled. The Florida Supreme Court has stated the following regarding claims for tortious interference:

> The elements of tortious interference with a business relationship are "(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." A protected business relationship need not be evidenced by an enforceable contract. However, "the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." "An action for intentional interference is appropriate even though it is predicated on an unenforceable agreement, if the jury finds that an understanding between the parties would have been completed had the defendant not interfered.

Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812, 814 (Fla.1994)(citations omitted). Upon review, the Court concludes that Primrose has sufficiently stated a tortious interference claim against DDS and FSS-FL with regard to their alleged interference with Primrose's advantageous business relationships with ROI and FTI.

### b. Breach of Fiduciary Duty

In Count III, Schessel asserts a breach of fiduciary duty claim against FSS-FL (the

manager of DDS) based on the following conduct by Dobiesz on behalf of FSS-FL: (a) taking money owed by DDS to Schessel for salary, distributions and expense reimbursements and diverting it to himself; (b) causing DDS to employ Dobiesz family members and paying them using DDS funds when the family members were not qualified for such employment and did not contribute value to DDS equivalent to the money being paid to them; (c) purporting to "expel" Schessel as an owner of DDS member units without any legal basis to do so; (d) excluding Schessel from enjoying the profits of DDS while paying such profits to himself; and (e) causing DDS to enter into contracts with entities owned directly or indirectly by Dobiesz and paying money to them without receiving products or services with a value equivalent to the payments made to them.

FSS-FL argues that this claim should be dismissed, because it does not identify a basis for a fiduciary duty apart from one that arises from Florida Statute § 608.4225 (stating that each manager and managing member of an LLC shall owe a duty of loyalty and a duty of care to the LLC and the LLC's members) and/or paragraph 4.5 of the DDS Operating Agreement (which states that FSS-FL shall perform its duties in good faith, in a manner that it reasonably believes to be in the best interests of DDS, and with such care as an ordinarily prudent person in a similar position would use under similar circumstances). FSS-FL argues that since Schessel already asserts counterclaims against FSS-FL for breaching the duty of loyalty set forth in Florida Statute § 608.4225 (Count IV) and for breaching paragraph 4.5 of the DDS Operating Agreement (Count VII), his breach of fiduciary duty claim in Count III is merely duplicative of the other two counterclaims and should be dismissed. This Court agrees with FSS-FL and dismisses this counterclaim.

### c. Declaratory Judgment

In Count V, Schessel alleges that on August 30, 2011, FSS-FL unilaterally amended the January 2, 2003 Operating Agreement for DDS without the knowledge or consent of Schessel in order to allow Dobiesz, who controlled FSS-FL (the majority member of DDS), to expel Schessel without cause. Schessel contends that the amendment is invalid, and as such, Schessel asserts a claim for the Court to declare the rights and obligations of FSS-FL, DDS, and Schessel under the Operating Agreement and the amendment thereto. Thus, Schessel seeks a declaration that the August 30, 2011 amendment is invalid and unenforceable.

FSS-FL argues that this claim must be dismissed, because the amendment is clearly valid. FSS-FL points out that Florida Statute § 608.4231(1) provides that an operating agreement may provide for the amendment of the operating agreement without the vote or approval of any member or class or group of members. Furthermore, paragraph 11.2 of the Operating Agreement provides that the Operating Agreement can be amended by a writing executed by a majority of the membership interests in DDS.[2] Additionally, paragraph 5.8(a) of the Operating Agreement provides the following:

> Whenever the Members of the Company are required or permitted to take any action by vote, such action may be taken without a meeting, without prior notice and without a vote, if a consent or consents, in writing, setting forth the action so taken shall be signed by the Members who hold the voting interests having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all of the Members entitled to vote therein were present and voted and shall be delivered to the . .

---

[2]Paragraph 11.2 of the Operating Agreement states that no amendment to the Operating Agreement "shall be effective unless made in a writing duly executed by a majority of the Membership Interests and specifically referring to each provision of this Agreement being amended." (Doc. No. 89-1).

. Manager . . . of the Company.

(Doc. No. 89-1).

Schessel appears to concede that the August 30, 2011 amendment was a writing executed by a majority of the membership interests in DDS. The amendment provides, in pertinent part, that the following provisions are added to the Operating Agreement as paragraph 9.5:

> (a) A Member may be expelled from Membership in the Company, without cause, and required to surrender to the Company his or her Membership Interest upon the vote or written consent of Members who hold at least a majority of the Membership Interests. In exchange for the expelled Members' Membership Interest, the Company shall pay the expelled Member an amount equal to his or her pro rata share of the Book Value of the Company, determined by the Company as of the last day of the quarter immediately preceding the date of expulsion ("Book Value").
>
> (b) A Member may be expelled from Membership in the Company, "with cause" (as hereinafter defined),[3] and required to

---

[3] The amendment defines "with cause" as facts which permit a conclusion by the Company that the Member has:
>    (i) failed or refused to carry out the directions of the Manager or the Chairman of the Company;
>    (ii) violated any applicable statute, regulation or ordinance or provision of any code of ethics with respect to his activities;
>    (iii) committed acts which would constitute a crime;
>    (iv) breached his employment obligations to the Company or any of its Affiliates;
>    (v) willfully committed or omitted to perform an act, which commission or omission is calculated to injure the Company or which results in the Company having committed a felony or being subject to any civil penalty or liability which would have an adverse effect on the business, property or financial condition of the Company;
>                    *    *    *
>    (vii) failed to attain the goals and performance objectives under any and all business plans of the Company; or
>    (viii) submitted any reports or documents to the Manager or Chairman of the Company which a Member knew or should have known were inaccurate or misleading.

17

> surrender to the Company his or her Membership Interest upon the vote or written consent of Members who hold at least a majority of the Membership Interests. In exchange for the expelled Members' Membership Interest, the Company shall pay the expelled Member an amount equal to fifty percent (50%) of the Book Value determined by the Company as of the last day of the quarter immediately preceding the date of expulsion.

(Doc. No. 89-2).

By June of 2012, FSS-FL was alleged to hold a majority of the membership interests in DDS, and as such, the amendment purports to allow FSS-FL to expel Schessel with or without cause. To the extent that the expulsion is without cause, DDS would be required to pay Schessel 100% of the book value of his membership interest in DDS. However, if Schessel was expelled for cause, then, according to the amendment, Schessel would be further penalized by only being paid 50% of the book value of his membership interests.

Schessel is not clear regarding whether he was expelled with or without cause, and as such, it is unclear whether DDS is using the amendment to support its contention that it is only required to pay Schessel 50% or 100% of the book value of his membership interests. Regardless, to the extent that DDS and FSS-FL contend that they could secretly agree to amend the Operating Agreement to allow them to expel Schessel and not pay him 100% of the *fair value* of his membership interests, the Court agrees with Schessel that the validity of the amendment is in question and he can seek declaratory relief.

Florida Statute § 608.431 provides that an interest of a member in an LLC is personal property. Furthermore, Florida Statute § 608.427 provides:

> Upon withdrawal, a withdrawing member is entitled to receive any

---

(Doc. No. 89-2).

> distribution to which the withdrawing member is entitled under the articles of organization or operating agreement, and, if not otherwise provided in the articles of organization and operating agreement, the withdrawing member is entitled to receive, within a reasonable time after withdrawal, the fair value of the withdrawing member's interest in the limited liability company as of the date of resignation based upon the withdrawing member's right to share in distributions from the limited liability company.

Fla. Stat. § 608.427(2). While the amendment to the Operating Agreement purports to authorize a different payment scheme for an expelled member's membership interests, the Companies have not provided any specific authority on point that would allow them to secretly agree to the forfeiture of Schessel's property interest in the LLC without his consent. As such, at this time, the Court denies the Companies' motion to dismiss Schessel's declaratory judgment claim.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Dobiesz's Motion to Dismiss (Doc. No. 107) is **GRANTED**, and the claims against him are dismissed without prejudice.

(2) DDS and FSS-FL's Motion to Dismiss (Doc. No. 106) is **GRANTED IN PART AND DENIED IN PART**: The motion is granted to the extent that the Court dismisses the unjust enrichment counterclaim (Count VIII) without prejudice due to lack of subject matter jurisdiction and dismisses the breach of fiduciary duty claim (Count III) for failing to state a claim; otherwise, the motion is denied.

**DONE AND ORDERED** at Tampa, Florida, this 3rd day of February, 2014.

Copies to:
Counsel of Record

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge