UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEMAN DATA SYSTEMS,
LLC, ET AL.,

       Plaintiffs,

v.                                              Case No.  8:12-cv-2580-T-24 EAJ

MARC S. SCHESSEL, ET AL.,

       Defendants.
_____

MARC S. SCHESSEL, ET AL.,

       Counter-Plaintiffs,

v.

DEMAN DATA SYSTEMS,
LLC, ET AL.,

       Counter-Defendants.
_____/

## **ORDER**

This cause comes before the Court on Defendants' Motion for Reconsideration. (Doc. No. 585). Plaintiffs oppose the motion. (Doc. No. 610). As explained below, the motion is granted.

## **I.  Background**

This case involves the breakdown of a business relationship. The Court issued orders on several motions to dismiss and motions for summary judgment. At issue in the instant motion is this Court's summary judgment order. (Doc. No. 560). Specifically, Defendants ask the Court to reconsider its rulings regarding two claims: (1) DDS's fraud claim against Schessel, and (2)

Primrose's tortious interference counterclaim against DDS and FSS regarding FTI.

## II.  Standard of Review

There are three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or to prevent manifest injustice.  Sussman v. Salem, Saxon & Nielsen, P.A., 153 F.R.D. 689, 694 (M.D. Fla. 1994)(citations omitted).  The Court notes that  reconsideration of a previous order is an extraordinary remedy to be employed sparingly.  See id. (citations omitted).  Defendants argue that their motion is based on the need to correct clear error, as the Court overlooked and/or misconstrued a few key facts.

## III.  Motion for Reconsideration

Defendants' motion for reconsideration is based on the Court's rulings regarding (1) DDS's fraud claim against Schessel, and (2) Primrose's tortious interference counterclaim against DDS and FSS regarding FTI.  Accordingly, the Court will analyze Defendants' arguments with respect to each of these claims.

### A.  Fraud

Prior to the Court's December 19, 2013 ruling on Schessel's motion to dismiss Plaintiffs' fraud claim, Plaintiffs alleged the following regarding DDS's fraud claim (Doc. No. 75): DDS hired Schessel based on his purported reputation for honesty, integrity, and truthfulness. However, Schessel intentionally misrepresented his character and professional background by failing to disclose the following:  (1) the termination of Schessel's prior employment because he was suspected of being involved in fraudulent activities, (2) a fraud investigation and Schessel's guilty plea, (3) his statements at his sentencing that he was the sole owner of DDS's confidential

information, (4) Schessel's unpaid income tax obligations and IRS levies, and (5) a lawsuit commenced against Schessel by his former employer. Plaintiffs alleged that as a result of such misrepresentations, DDS hired Schessel, appointed him as president, and allowed him to acquire 1/3 ownership in DDS. Plaintiffs also alleged that throughout his affiliation with DDS and until discovered by Dobiesz in June of 2012, Schessel continued his misrepresentations in order to ensure his continued employment with, and ownership of, DDS.

Schessel moved to dismiss the fraud claim, arguing that he did not have a duty to disclose the information at issue. Plaintiffs responded that prior to being hired, once Schessel disclosed some information relating to his character and background, he had a duty to fully disclose all such information. (Doc. No. 87). However, Plaintiffs did not address any further concealment of such information after Schessel was hired. As a result, the Court dismissed the fraud claim, except to the extent that it was "based Schessel's failure to disclose that his prior employment was terminated because he was suspected of being involved in fraudulent activities." (Doc. No. 147, p. 6).

Thereafter, Defendants moved for summary judgment on the fraud claim, and the Court granted summary judgment to Defendants to the extent that the fraud claim was based on Schessel's failure to disclose that his prior employment was terminated because he was suspected of being involved in fraudulent activities. (Doc. No. 560, p. 34). The Court concluded that the evidence established that Schessel was not fired by Continuum and that his termination was not related to his involvement in fraudulent activities. (Doc. No. 560, p. 34).

The Court, however, went on to address Plaintiffs' argument (set forth in their response brief) that Schessel fraudulently failed to disclose his involvement with the fraudulent activity

and the tax evasion charge and guilty plea, when Schessel was asked by Dobiesz on five occasions after he was hired whether he (Schessel) had ever done anything that could embarrass or reflect adversely on the integrity of DDS. (Doc. No. 560, p. 34). The Court concluded that a genuine issue of material fact existed regarding these alleged non-disclosures and denied Schessel's motion for summary judgment on Plaintiffs' fraud claim to the extent that it was based on these non-disclosures.

In the instant motion, Defendants argue that the Court erred to the extent that it found that any part of the fraud claim remains, given that the Court stated in its dismissal order that the fraud claim only remained as to the details regarding Schessel's termination, and the Court concluded in its summary judgment order that Schessel was not fired by Continuum. The Court agrees with Defendants that it erred in its summary judgment order by allowing the fraud claim to remain to any extent, because the Court's December 19, 2013 dismissal order limited the extent that the fraud claim remained at the time of the summary judgment motions. Accordingly, the Court vacates its summary judgment order to the extent that the Court concluded that any part of the fraud claim remains.[1]

---

[1] Defendants also ask the Court to strike any portions of its summary judgment order in which the Court found that Schessel admitted to being involved in the fraudulent activities. Defendants argue that these findings are incorrect and highly prejudicial, because Dobiesz will use the Court's order to destroy Schessel's career. To the extent that the Court stated that Schessel engaged in a fraudulent scheme for which he received $545,000, the Court agrees that the Court's statement should be stricken.

However, to the extent that the Court stated that when Schessel pled guilty to the tax evasion charge, he acknowledged his role in the fraudulent activity, the Court concludes that the evidence supports that statement. Specifically, Schessel executed an Affidavit of Confession of Judgment in which he stated that he caused a $100,000 rebate payment due to Continuum to be directed to another company, and as a result, Continuum did not receive $100,000 to which it was entitled. (Doc. No. S-511, Ex. 87). Furthermore, in connection with the $100,000 diversion, Schessel stated at his deposition that he signed a contract that he should not have signed. (Doc. No. S-511, depo. p. 303, 338-39). As such, this evidence supports the conclusion that Schessel acknowledged his role in the fraudulent activity of diverting money due to Continuum. While Schessel was not charged with any role in a bigger scheme that included two

4

The Court notes that Plaintiffs ask the Court to reconsider its dismissal order to the extent that they alleged fraudulent misrepresentations/concealments after Schessel was hired. The Court is not inclined to do so at this stage in the proceedings. The proper time to argue for continuance of these aspects of the fraud claim was in response to Schessel's motion to dismiss over a year ago.[2]

### B. Tortious Interference

Primrose asserted a tortious interference counterclaim against DDS and FSS regarding their alleged interference with FTI, a company that Primrose was working with in order for the two companies (Primrose and FTI) to form a new company together. (Doc. No. 89). Defendants contend that in order to ruin the upcoming deal between Primrose and FTI, Dobiesz lied to FTI by telling FTI that Schessel was subject to a covenant not to compete.

The Court granted Plaintiffs summary judgment on this counterclaim, because the Court misconstrued the time-line of events. (Doc. No. 560, p. 54-56). The Court erroneously stated that Dobiesz told FTI that Schessel was subject to a covenant not to compete prior to the Court's June 11, 2013 ruling that the covenant not to compete could not be enforced as written. However, Defendants now direct the Court to parts of the record that the Court misconstrued that show that Dobiesz's alleged conduct occurred after the Court's June 11, 2013 order.

---

other people, he did acknowledge his role in the $100,000 Continuum rebate diversion.

[2]Since Plaintiffs state in their response brief to Schessel's motion for summary judgment that there were five specific instances in which Dobiesz asked Schessel about his past and to which Schessel deceived him, one would have expected such allegations to have been contained in the amended complaint. Such failure is part of the reason why the Court declines to reconsider its dismissal order, as Plaintiffs failed to properly put Schessel on notice regarding the extent of the fraud claim.

During his deposition, Schessel stated that between July and September of 2013, DDS and FSS tortiously interfered with Primrose's relationship with FTI. (Doc. No. S-513, depo. p. 245-48). Additionally, Schessel states in a declaration that Richard Croy (FSS's vice president) told Schessel in September of 2013 that Dobiesz called Croy into his office and told Croy that he (Dobiesz) called FTI and told FTI that Schessel could not do a deal with FTI because Schessel was subject to a non-compete agreement. (Doc. No. 472-4, ¶ 11). Thus, these allegations support Schessel's contention that the alleged tortious interference occurred after the Court ruled that the non-compete agreement was not enforceable as written.[3]

In response, Plaintiffs argue that such allegations are supported by inadmissable hearsay. The Court agrees that Schessel cannot testify regarding what Croy told him, because such statements are hearsay. However, such evidence could be reduced to admissible form at trial if Schessel questions Dobiesz, Croy, and/or whoever Dobiesz allegedly spoke with at FTI. As such, the Court will allow Primrose's tortious interference counterclaim to proceed to trial, with the warning that Primrose cannot rely solely on Schessel's testimony to support this counterclaim.

### IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendants' Motion for Reconsideration (Doc. No. 585) is **GRANTED** and the Court's summary judgment order (Doc.

---

[3] Plaintiffs also argue that Schessel has not shown when Dobiesz learned that the non-compete agreement was unenforceable. However, the Court made this ruling on June 11, 2013, and Defendants contend that Dobiesz made the false statements about the non-compete agreement between July and September of 2013. The Court presumes that Dobiesz learned about the status of the non-compete at the time that the Court ruled regarding its enforceability; Plaintiffs are free to offer contradictory evidence at trial.

No. 560) is amended as follows:

(a) The Court grants Schessel summary judgment on DDS's fraud claim in its entirety.

(b) The Court denies DDS and FSS summary judgment on Primrose's tortious interference counterclaim based on their alleged interference with FTI.

**DONE AND ORDERED** at Tampa, Florida, this 5th day of January, 2015.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record