UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEMAN DATA SYSTEMS, LLC,
ET AL.,

    Plaintiffs,

v.    Case No. 8:12-cv-2580-T-24 EAJ
**FILED UNDER SEAL**

MARC S. SCHESSEL, ET AL.,

    Defendants.
_____/

## IN CAMERA ORDER

This cause comes before the Court on two motions: (1) Plaintiffs' Motion to Enforce the Settlement Agreement (Doc. No. 812), which Defendants oppose (Doc. No. 817); and (2) Defendants' Motion to Enforce the Escrow Provision of the Settlement Agreement (Doc. No. 825), which Plaintiffs oppose (Doc. No. 826). The Court held an evidentiary hearing on these motions on November 21, December 6, and December 15, 2016. After careful review of the record and the evidence presented, the Court makes the following findings.

On April 13, 2015, after several days of trial, the parties entered into a settlement agreement wherein the Court retained jurisdiction for two years. The settlement agreement provided for a specific dispute resolution process/protocol relating to the settlement agreement that the parties must follow during the two-year period ending on April 13, 2017. (Doc. No. 770). Specifically, the parties agreed that for any disputes, the party alleging the breach must: (1) notify the other party of the alleged breach "with reasonable detail" in order to give the other party an opportunity to cure; (2) if the alleged breach is not cured within 60 days, the complaining party shall have the right to request a mediation with Magistrate Judge Porcelli; and (3) if the dispute cannot be resolved in mediation, the dispute shall be transferred to the trial

Court, who will hold an evidentiary hearing and then issue a final, binding, non-appealable decision adjudicating the dispute.

## I.  Plaintiffs' Motion to Enforce the Settlement Agreement

Plaintiffs contend that Defendants violated Section 7 of the settlement agreement.  With respect to this motion, Plaintiffs bear the burden of proving by a preponderance of the evidence that: (1) Defendants have breached the settlement agreement, (2) the breach was material, and (3) Plaintiffs suffered damages as a result.  See Trowell v. South Financial Group Inc., 315 F. App'x 163, 165 (11th Cir. 2008)(citation omitted).  Accordingly, the Court will analyze the alleged breaches.

### A.  Section 7(b)(1)

Plaintiffs contend that Defendants violated Section 7(b)(1), which provides the following:

> 7b. Each of The Schessel Parties[1] shall deliver the following materials and all copies in all formats to The DDS Parties on or before May 28, 2015 to the extent the following materials are in the possession, custody, or control of any of The Schessel Parties, whether or not they are in electronic form:
> > 1. Any equipment that was issued to Schessel by any of The DDS Parties, including any computer or cell phone and all data of any of The DDS Parties thereon. Any other data (other than data of The DDS Party) shall be deposited by The Schessel Parties with the Escrow Agent under and subject to the terms, conditions and provisions of the Escrow Agreement established under the Action to be maintained in escrow for a period of two years from the date of this Agreement.

(Doc. No. 770, p. 5).

---

[1] The introductory paragraph of the settlement agreement defines The Schessel Parties as Marc S. Schessel and Primrose Solutions, LLC.  (Doc. No. 770, p. 1).

2

First, Plaintiffs contend that Defendants failed to turn over all of the equipment and data required by this provision. In the July 15, 2015 letter notifying Defendants of this alleged breach, Plaintiffs' counsel, John Blair, states the following: "Not all equipment issued to Schessel by any of The DDS Parties was returned. More specifically, the iPad and one of the iPhones issued to Schessel have not been returned." (Doc. No. 812-2, p. 2). Thus, Plaintiffs put Defendants on notice that Defendants allegedly breached Section 7(b)(1) by failing to return an iPad and iPhone. However, in their July 21, 2016 motion to enforce the settlement agreement and at the evidentiary hearing, Plaintiffs contend that two desktop computers were not turned over. Specifically, they contend that Defendants failed to turn over a Dell Vostro Desktop computer (Service Tag # BHF5HK1) and a Dell XPS Desktop computer (Service Tag # 851BDH1).

There was evidence presented at the hearing that Plaintiffs owned these two Dell desktop computers, which were purchased in 2008 and 2009. For the purposes of this Order, the Court will accept Plaintiffs' contention of ownership, despite questions raised at the evidentiary hearing about the authenticity of the invoices.[2] Furthermore, there was testimony from Marc Schessel that he did not return these desktop computers to Plaintiffs. Instead, after copying the data off of the desktop computers and putting the data on an external hard-drive to be returned to DDS and/or escrowed under the terms of the settlement agreement, Schessel had Matthew Decker wipe the computers of their information and then Schessel destroyed these computers in or around May or June of 2015. Schessel contends that he thought that these desktop computers were his personal property, and the Court accepts that Schessel did not realize that these

---

[2]Plaintiffs' witness, Steve Platti, testified that the invoices for these computers do not contain the computers' service tag numbers, yet Plaintiffs presented the Court with invoices that do, in fact, contain service tag numbers.

3

computers belonged to Plaintiffs given the fact that in previous dealings between the parties[3], these two computers were never identified by Plaintiffs as computers belonging to Plaintiffs.

Based on the evidence presented at the hearing, the Court finds that Schessel failed to turn over two desktop computers belonging to Plaintiffs that were required to be turned over under the settlement agreement. However, the evidence also shows that the data that was on the two computers was preserved and that the 2008 and 2009 desktop computers (by May 28, 2015) were themselves of minimal value. The Court therefore finds that Schessel's failure to turn over the Dell Vostro Desktop computer (Service Tag # BHF5HK1) and Dell XPS Desktop computer (Service Tag # 851BDH1) does not constitute a material breach of the parties' settlement agreement.[4]

Plaintiffs also contend that Defendants violated Section 7(b)(1) by failing to turn over all of the DDS data that was on equipment that Plaintiffs issued to Schessel or that was within his possession, custody, and control, including the files identified in Section 7(a) of the settlement agreement. Section 7(a) of the settlement agreement provides the following:

> The Schessel parties acknowledge and confirm receipt from Todd Bennett of the following Excel files which contain some data that can be found in the DDS database:
>
> 8/3/12: 007_02xls.xlsx
>
> 8/7/12: OSF.xlsx

---

[3]In January 2014 emails between the parties discussing the ownership of electronic devices, Plaintiffs stated that they owned and sought return of a Dell Latitude Desktop and Dell Vostro desktop with different service tag numbers than those identified in the motion and at the hearing. (Doc. No. 818, p. 6–7).

[4]"To constitute a vital or material breach, a party's nonperformance must 'go to the essence of the contract.' A party's 'failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach.'" MDS (Canada) Inc. v. Rad Source Technologies, Inc., 720 F.3d 833, 849 (11th Cir. 2013)(internal citation omitted).

        8/7/12: BHS.xlsx

        8/30/12: Spreadsheet that Marc sent to Joel Meckley

        9/6/12: osf-xwalk.xls

        10/30/12: The data in the application screenshots that Schessel emailed to FTI

(Doc. No. 770, p. 4–5).

Plaintiffs presented evidence that with respect to these files identified in Section 7(a), only one was returned: 8/3/12: 007_02xls.xlsx. With regards to two of the files—8/7/12: OSF.xlsx and 8/7/12: BHS.xlsx—Plaintiffs' evidence shows that these files were zeroed out on the computer on which the files had previously resided. With regards to the 8/30/12: Spreadsheet that Schessel sent to Joel Meckley of Geisinger Health Systems, Plaintiffs' evidence shows that Defendants returned a different version of this file to Plaintiffs. Finally, with regard to the 9/6/12: osf-xwalk.xls and 10/30/12: screenshots, Plaintiffs' evidence shows that these files were not returned to Plaintiffs.

However, the totality of the evidence presented at the hearing does not convince the Court that these files were required to be turned over to Plaintiffs under the settlement agreement. The files identified in Section 7(a) were simply files that Defendants acknowledged "contain some data that can be found in the DDS database." (Doc. No. 770, p. 4). While Steve Platti testified that the data contained within the files identified in Section 7(a) of the settlement agreement belonged to DDS, the Court is not convinced. The Court credits the testimony of Robert Handfield, Anders Ohlssen, and Marc Schessel, all of whom testified that much, if not all, of the information in those files came directly from the hospital-customers, not DDS. The fact that Schessel returned one of the files is not evidence that Defendants knew that all of the

files listed in Section 7(a) were Plaintiffs' property. At the hearing, Schessel testified that he did not intend to return the file that he did return, as the settlement agreement did not require him to; instead, he returned it by mistake. Accordingly, the Court finds that Plaintiffs have not met their burden of showing that these files were DDS's property or that the data contained within the files are DDS's property.

Given this finding, the Court concludes that the files identified in Section 7(a) are considered "other data" under Section 7(b)(1), which "shall be deposited by The Schessel Parties with the Escrow Agent under and subject to the terms, conditions and provisions of the Escrow Agreement established" during this lawsuit. (Doc. No. 770, p. 5). The evidence before the Court shows that these files were copied onto an external hard-drive and delivered to the Escrow Agent contemplated by the parties' settlement agreement—John Jorgensen. Thus, Defendants attempted to fully comply with Section 7(b)(1) with respect to these files. However, as addressed later in this Order, as a result of Plaintiffs' actions, Jorgensen was no longer acting as the escrow agent for the parties, and the external hard drive containing the escrowed materials was returned by Jorgensen to Defendants. Therefore, Defendants' non-compliance with the escrow provision was caused by Plaintiffs themselves, and they cannot now complain that the materials are not currently being held in escrow. Finally, the Court finds that there is no other evidence of specific, identifiable data or equipment that was not turned over as required by Section 7(b)(1).

### B.  Sections 7(b)(2)–(10)

Next, Plaintiffs argue that Defendants did not turn over *all* of the various items required by these subsections. However, in the July 15, 2015 letter notifying Defendants of this alleged breach (Doc. No. 812-2) and during the evidentiary hearing, Plaintiffs never specifically

6

identified any items that were not turned over. Instead, Plaintiffs argue that Defendants' failure to properly turn over the files identified in Section 7(a) and the two Dell desktop computers, combined with the fact that there is evidence that USB devices were *connected* to Plaintiffs' computers and laptops that were in Defendants' possession, shows that there *may be* other items that should have been turned over that have not been turned over. However, Plaintiffs' burden is by a preponderance of the evidence, and the Court is not willing to grant relief based on Plaintiffs' suspicion or speculation.

While Plaintiffs presented evidence that various USB devices were *connected* to Plaintiffs' laptops, there is no actual evidence that those USB devices belonged to Plaintiffs or ever *contained* any of DDS's data. Furthermore, Plaintiffs' belief that it is suspicious that Schessel no longer has the USB devices or knows where they are located[5] is not evidence that these devices contain DDS data. USB devices are relatively low-cost, fungible storage devices that are not necessarily kept or tracked forever. Given that there is no evidence that these USB devices belonged to Plaintiffs or actually contain DDS data, the fact that Defendants possessed these devices or that Defendants either lost or destroyed these devices is not proof that Defendants have breached Section 7(b)(1)–(10).

### C.  Section 7—Language after Subsection 7(b)(10)

Next, Plaintiffs contend that Defendants breached the paragraph of the settlement agreement that follows subsection 7(b)(10) and provides the following:

> To the extent any of The Schessel Parties **knows or has reason to know** that any of The Schessel Parties has **knowingly transferred** any of the above materials to any person or entity other than any of

---

[5]Schessel testified that he did not keep track of his USB drives and had no idea where they were. He stated, "I lost them. They are disposable." (Doc. No. 851, p. 67).

> The Schessel Parties, each of The Schessel Parties shall provide a list describing in detail each item that was transferred, the date of the transfer, and the recipient of the transfer and shall request in writing (with a copy to The DDS Parties) that the recipient permanently destroy all copies of each such item.

(Doc. No. 770, p. 6)(emphasis added). Plaintiffs make four arguments in support of their contention that Defendants breached this provision: (1) Defendants failed to provide a list describing in detail each item that was transferred, the date of the transfer, and the recipient of the transfer; (2) Defendants improperly provided destruction notices to their own agents who should not have received them; (3) Defendants delayed in providing copies of the destruction notices in a calculated attempt to facilitate the destruction of critical evidence relevant to another lawsuit; and (4) Defendants failed to send destruction notices to ten third-parties (healthcare and hospital companies) that had obtained copies of critical information. Accordingly, the Court will address each argument.

Plaintiffs first argue that Defendants failed to provide a list describing in detail each item that was transferred, the date of the transfer, and the recipient of the transfer. In response, Defendants argue that they did not knowingly transfer any DDS data to any third-parties (other than their own experts and consultants for litigation purposes), and as such, there was no list of information for Defendants to provide to Plaintiffs.

Second, Plaintiffs argue that Defendants improperly provided destruction notices to their own agents. Plaintiffs contend that Defendants agents are not third-parties that should have received destruction notices. Instead, Plaintiffs contend that Defendants' agents (i.e., people under Defendants' control, such as their litigation consultants and experts) are included within the definition of "The Schessel Parties" and are required to turn over any DDS material directly to Plaintiffs. This argument fails, however, because the introductory paragraph of the settlement

8

agreement clearly defines "The Schessel Parties" as consisting solely of Marc Schessel and Primrose Solutions, LLC. It does not include The Schessel Parties' agents or litigation experts or consultants. As such, it was reasonable for Defendants to send their agents destruction notices, if Defendants thought that those persons or entities might have DDS data.

Third, Plaintiffs argue that Defendants forwarded destruction notices to various individuals in an attempt to facilitate the destruction of critical evidence relevant to another lawsuit. Plaintiffs contend that Defendants made a calculated attempt to facilitate the destruction of critical evidence in that lawsuit by failing to inform Plaintiffs of the destruction notices for more than a month after sending them, depriving Plaintiffs of the opportunity to object or respond. Defendants acknowledge that they sent out 16 destruction notices at the end of May 2015 but did not provide Plaintiffs with copies of the destruction notices until July 3, 2015. Defendants acknowledge the delay in copying Plaintiffs, but they argue that there is no time requirement in the settlement agreement for them to provide Plaintiffs with copies of the destruction notices, and as such, they could not have breached the settlement agreement.

The Court finds it disingenuous for Defendants to argue that the settlement agreement did not provide a time limit. The settlement agreement clearly contemplated copying Plaintiffs with each destruction notice simultaneously with the mailing of the destruction notice to each third-party. However, Plaintiffs have not shown that this breach was a material breach such that they have suffered any damages. The provision requires that Plaintiffs be copied with each destruction notice; it does not provide Plaintiffs with the ability to dispute, object, or respond to the destruction directive. Furthermore, there is no evidence that even if Defendants had timely copied Plaintiffs with the destructions notices, Plaintiffs would have been able to stop any of the recipients from destroying anything. As such, this breach does not provide a basis for relief.

Fourth, Plaintiffs argue that Defendants failed to send destruction notices to ten third-parties (healthcare and hospital companies) that obtained copies of critical information. As to the ten healthcare and hospital companies that did not initially receive a destruction notice, Defendants contend that they did not know or have reason to know that any of The Schessel Parties transferred any of the items referenced in Section 7(b) to those ten entities. In an abundance of caution, Defendants sent destruction notices on May 26, 2015 to other individuals and entities, including eight of the ten entities about whom Plaintiffs claim did not receive such notices.[6]

Plaintiffs complain about the form and content of the notices sent to these entities, because the notices do not provide a detailed list of the DDS property that was transferred. However, because Defendants claim not to be aware of any of the items in Section 7(b) that were transferred, Defendant argue that they could not provide a list.

Given that Defendants do not appear to object to sending destruction notices to all ten entities, the Court will order Defendants to send destruction notices to the two entities that Defendants overlooked. However, the Court will not order Defendants to send a form letter as provided to the Court by Plaintiffs during the evidentiary hearing.

Finally, the Court notes that the only evidence presented at the evidentiary hearing regarding Defendants giving DDS data to third-parties consisted of evidence that the files identified in Section 7(a) of the settlement agreement were shared with third-parties. However, as previously stated, the Court is not convinced that those files are DDS data. Instead, those files may contain some data that can also be found in DDS's database. Additionally, as previously stated, the evidence before the Court shows that these files were copied onto an external hard-

---

[6]Defendants claim to have inadvertently overlooked two of the ten entities.

drive, which Defendants attempted to deliver to Jorgensen, as the escrow agent. Therefore, any destruction of these files by third-parties did not deprive Plaintiffs of their property. Instead, the destruction was required by the parties' settlement agreement, which stated: "The Schessel Parties . . . shall request in writing . . . that the recipient permanently destroy all copies" of the transferred data. (Doc. No. 770, p. 6).

### D.  Relief Requested in Plaintiffs' Motion

In their motion, Plaintiffs ask the Court for the following relief: (1) a declaration that Defendants failed to comply with the settlement agreement; (2) an order compelling Defendants to fully comply with the settlement agreement within 15 days; (3) an order directing Defendants to provide affidavits (in a form approved by the DDS Parties) from all of the recipients of the destruction notices detailing the actions taken by the recipients in response to the destruction notices; (4) an order directing Defendants to send a written notice to all of their customers that they must suspend their use of any and all DDS data; (5) an order directing Defendants to: (a) identify all of the individuals and entities that obtained DDS data, (b) provide the date and method of transmission of said data, and (c) require that such individuals and entities provide an affidavit that they will not use or retain the DDS data; (6) an award of not less than $2,000,000 in sanctions against Defendants; and (7) an award of Plaintiffs' attorneys' fees and costs incurred in seeking to enforce the settlement agreement.  However, the Court finds that Plaintiffs have not shown that Defendants materially breached the settlement agreement, and therefore, they are not entitled to their requested relief.

Furthermore, much of Plaintiffs' requested relief goes beyond what is required by the settlement agreement. For example, Plaintiffs request: (1) affidavits from all of the recipients of the destruction notices detailing the actions that they took in response to the destruction notices;

and (2) affidavits from all of Defendants' customers stating that they will not use or retain any DDS data.

The only relief to which Plaintiffs are entitled is that Defendants be required to: (1) send destruction notices to the two healthcare/hospital entities that they overlooked (as described in Section I-C of this order); and (2) turn over the external hard-drive containing the "other data" described in Section 7(b)(1) of the settlement agreement to an escrow agent, which is what Defendants previously attempted to do. Because Plaintiffs hired Jorgensen as their own expert, the agreed-upon Escrow Agent returned the external hard-drive, and there is currently no escrow agent to take possession of the external hard-drive (as discussed below). As a result, Defendants failure to fully comply with the escrow provision cannot be blamed on Defendants.

## II.  Defendants' Motion to Enforce the Escrow Provision

Defendants contend that Plaintiffs violated Section 7(b)(1) of the settlement agreement by hiring the parties' Escrow Agent, John Jorgensen. Section 7(b)(1) provides the following:

> 7b. Each of The Schessel Parties shall deliver the following materials and all copies in all formats to The DDS Parties on or before May 28, 2015 to the extent the following materials are in the possession, custody, or control of any of The Schessel Parties, whether or not they are in electronic form:
> 1. Any equipment that was issued to Schessel by any of The DDS Parties, including any computer or cell phone and all data of any of The DDS Parties thereon. Any other data (other than data of The DDS Party) **shall be deposited by The Schessel Parties with the Escrow Agent under and subject to the terms, conditions and provisions of the Escrow Agreement established under the Action to be maintained in escrow for a period of two years from the date of this Agreement.**

(Doc. No. 770, p. 5)(emphasis added).

John Jorgensen is identified as the Escrow Agent in the Escrow Agreement entered into

12

by the parties during the pendency of this lawsuit. (Doc. No. 826-1). Clearly, the settlement agreement contemplates that Jorgensen would be the escrow agent for the items required to be escrowed under the settlement agreement. While the parties may dispute whether Jorgensen's obligation to remain the escrow agent remained after the case settled, the Court finds that Jorgensen was not obligated to remain unless he chose to do so. The settlement agreement contemplated new duties and obligations, which under the Escrow Agreement Jorgensen had to consent to in order to be bound as the escrow agent.[7]

While the Court concludes that Jorgensen could not be forced to continue on as the escrow agent after this case settled, the fact that Plaintiffs hired Jorgensen as an expert days after the settlement in this case occurred guaranteed a conflict of interest for Jorgensen. Plaintiffs' act of hiring away the parties' contemplated expert made it impossible for Defendants to comply with their obligations under Section 7(b)(1) of the settlement agreement to turn over certain data to the escrow agent.

Because Plaintiffs created this predicament, Plaintiffs cannot complain that the data has not been escrowed to date. With respect to the escrow provision of the settlement agreement, it appears to the Court that three options exist:

Option 1:   Plaintiffs can waive any requirement that any data be escrowed.

Option 2:   Defendants can agree to the selection of Matt Decker, Defendants' expert, as the new escrow agent, with the parties both equally sharing the escrow costs.

---

[7]Paragraph 7(f) of the Escrow Agreement provides that the Escrow Agent "shall not be bound by any amendment to this Agreement or by any other agreement among the Plaintiffs and Defendants except such amendment or agreement as shall have been expressly approved and executed by the Escrow Agent." (Doc. No. 826-1, p. 6).

>    Option 3:    Defendants can identify and select a new escrow agent that meets with Plaintiffs' approval. The reasonable costs of identification and selection of the escrow agent to be borne by Plaintiffs, the party that created the problem. Thereafter, the parties will both equally share the escrow costs.

Because the two-year term of escrow provided in the settlement agreement will expire in three months, Option 3 does not seem practical. It appears to the Court that if Plaintiffs still want the materials escrowed, Option 2 make the most sense. The Court briefly discussed Option 2 at the evidentiary hearing. The parties are directed to confer regarding these options and then file a joint notice with the Court identifying which option they have agreed to pursue. If Plaintiffs want to enforce the escrow provision and the parties do not select Option 2, they are directed to explain to the Court in writing why Option 2 was not chosen. Additionally, no later than 7 days after an escrow agent has been selected and an escrow agreement has been executed, Defendants must turn over all materials that must be escrowed under the settlement agreement.

### III. Attorneys' Fees and Costs

Both parties seek attorneys' fees and costs as prevailing parties. Section 8(c) of the settlement agreement provides the following:

> The parties agree that with respect to any Claim(s) under [the dispute resolution provision of the settlement agreement], the prevailing Party shall be reimbursed its legal fees and costs by the non-prevailing party.

(Doc. No. 770, p. 9). It is anticipated that both parties may perceive themselves as the prevailing party with respect to some or all of the issues raised in these two motions. However, with respect to Plaintiffs' motion, the fact that the Court did not find a material breach of the settlement agreement by Defendants does not mean that Defendants are blameless in this matter.

Defendants' failure to timely copy Plaintiffs with the destruction notices, Defendants' failure to initially send destruction notices to the ten hospital/healthcare entities, and Defendants' submission of an affidavit claiming that the desktops at issue were Schessel's property when their ownership was unclear are all examples of conducted by Defendants that contributed to the parties' problems.

Likewise, Plaintiffs are not blameless in this matter either. They made vague assertions that not all DDS data was turned over, but they failed to specifically identify any such data that Defendants still possessed. Plaintiffs also hired Jorgensen, the agreed-upon Escrow Agent, making it impossible for Defendants to comply with the escrow provision. The Court notes, however, that with respect to Defendants' motion to enforce the escrow provision, Defendants have not shown any damages as a result of Jorgensen's departure; the escrow provision was for the benefit of Plaintiffs.

The Court finds that neither party is entitled to attorneys' fees. Both parties' actions led to the time consuming mediation and to the necessity for this Court's intervention. Neither side shall be awarded attorneys' fees or costs.

**IV. Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Plaintiffs' Motion to Enforce the Settlement Agreement (Doc. No. 812) is **DENIED except to the extent that** Defendants: (a) are ordered to send destruction notices to the two healthcare/hospital entities that they overlooked (as described in Section I-C of this order); and (b) will be ordered to turn over the required materials to the escrow agent if a new agent is selected.

15

(2) Defendants' Motion to Enforce the Escrow Provision of the Settlement Agreement (Doc. No. 825) is **GRANTED as follows:**

    (a) The parties must file a joint notice with the Court by January 27, 2017 identifying which of the three options they have agreed to pursue regarding an escrow agent.

    (b) If the parties selected Option 2 or 3: No later than 7 days after an escrow agent has been selected and an escrow agreement has been executed, Defendants must turn over the external hard-drive containing all materials that are required to be escrowed under the settlement agreement.

**DONE AND ORDERED** at Tampa, Florida, this 10th day of January, 2017.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record
Magistrate Judge Anthony E. Porcelli